and six, Reserva Building Corporation v. Municipal Government of Mayaguez et al. Mr. Roland, good morning. Good morning, Your Honor. Mr. Roland, on behalf of plaintiff appellants. You're probably too close to the mic. Okay. Step back a little bit. Okay. Your Honor, first of all, I would like to reserve a minute for rebuttal, if I may. Yes, sir. And second, allow me to inform this to the court. Last Thursday, I had dental surgery, and I have a plastic protector in my mouth, and that's affecting my pronunciation. So, I'm sorry for that. When you file the brief, they'll make up for it. Thank you. Your Honor, I would like to begin with our July 22nd motion, the urgent motion that we filed last Tuesday. When we interviewed plaintiff for the first time, that was late May or early June 2011, we were well aware of the Supreme Court decision in Board of County Commissioner, and we were also well aware of the split decision of the circuits as to contractors that had prior commercial relation versus those that have no prior commercial relation. We have represented other contractors in similar case before the district court. When we interviewed plaintiff, we asked him if he had a previous contract with the municipality of Valle West, and simply he told us that he didn't have. From there on, we presented the case, and we argued all our motions under the contention that they didn't have a previous commercial relation. Last Tuesday, we had an interview with our client in order to inform him what was going to happen here, and we informed him that it was a question of law that was unsettled in the first circuit, and we informed him about the third circuit and the first circuit's conflicting decisions. And suddenly, for the first time, he said, but I did have a contract. And I said, exactly why are you telling me this now? Why didn't you say before? He said, well, I thought you meant a contract with Head Start. The issue is this. They have a building, a real estate property. That building has an area which is classified as a commercial area. That area was the subject of this contract, and the contract was with the Head Start division of the municipality of Valle West. In other floors, there are, if I recall correctly, four apartments, and with those four apartments, he had a commercial relation, but with the housing division of the municipality of Valle West. Well, he said those were two different things. And we woke up in the dark. We didn't know that that previous relation existed. When defendants filed their motion for summary judgment, their allegation was that the contract was never signed. When we received Magistrate Judge Bailey's opinion and order, it goes around the fact that there was no previous commercial relation. If we had known that there was a previous commercial relation, instead of filing an appeal, the only thing we had to do is file a reconsideration because the whole opinion goes around that issue of a previous commercial relation. But you've got a problem here beyond that, and that is that the stockholders of this company were not the individuals who engaged in First Amendment activity, right? It's their relatives. No, Your Honor, both of them. What? The stocks. I know the complaint alleges that the stockholders engaged in First Amendment activity, but the summary judgment record doesn't provide any evidence of that, does it? Well, Your Honor, it's our allegation that both the relative and the stockholders are the ones that engaged in this political dispute that happened in the city of Valle West within the same political party. But was there evidence in the summary judgment record that the stockholders had engaged in First Amendment activity? Yes, Your Honor, if I recall correctly, in our opposition to summary judgment, we presented to the court that not only the relative but the stockholders are the ones. What evidence did you present that the stockholders had engaged in First Amendment activity? If I recall correctly, Your Honor, we quoted the position of the stockholders as to their involvement in the political dispute with the mayor, because we are not telling, we are never presenting to the court that the reason for this political discrimination is only that they were the relative of the, as the mayor put it, political enemies. We're saying that besides that they are relative, they were actively involved in the political dispute that they had within the same political party in the city of Valle West. Now, we're not relying only that one is the aunt and the other is the cousin. But when the mayor was questioned, he mentioned only the activity of the relatives as affecting his decision not to sign the contract. If I recall correctly, Your Honor, it was one of the stockholders that met the mayor at the closing of the Central American Games, and to that stockholder was that the mayor said that he would not give the contract to his political enemies. Referring to the relatives. No, Your Honor. Referring to him, to his son, and to all the political enemies that he had. In no moment did the mayor say, you are not my political enemy. My political enemy are your uncle and your cousin, I believe, are their relations. They are referring to him as a political enemy, because he was the one that approached the mayor, and he is a stockholder, and it's to him that the mayor is addressing that allegation as to the reason why the contract was not given. So, we have presented that it's the political identification of the stockholders within a group that is against the mayor, the one that has brought all this discrimination and all this decision from the mayor not to grant this contract. You see, Your Honor, the procedure within the HESTAR program was always that the contract was signed by the director. The mayor never had anything to do with a contract. My clients didn't procure the contract. My clients didn't go to the municipal government of Valladolid asking that their property rent. It was the other way around. HESTAR needed an area to establish different HESTAR programs there. After they inspected several areas, they decided that the only one, and I want to emphasize this, the only one that complied with all the HESTAR requirements was plaintiff property. And then they approached Mr. Pagan, who is the president of the Rosado La Vida Corporation. And then they began the negotiations. And after they agreed as to the rent, then begins the whole procedure for the municipal government to approve this contract. This contract was approved by all the persons and all the committees in the municipal government of Valladolid that had to do with that. After it was approved, and for the first time, the director of the HESTAR program received a communication from the mayor saying that from now on, all the contracts have to have his approval, which it was strange because it was the first time, but she complied with that, and she sent the whole package to the mayor for his approval, mind that the president of the committee that gave his last approval was the brother of the mayor. And it was approved. And suddenly he received a note saying this contract will not proceed. When that happened, obviously, the director called Mr. Pagan, the president of Rosado La Vida, and informed him, well, unfortunately, the mayor did not approve the contract, and the contract will not proceed. Time after that happened the meeting between the other stakeholder, which is the father of Mr. Pagan, the president of Rosado La Vida Corporation, and the meeting when the mayor, as I said before, informed him that he will not give a contract to his political enemy. If the mayor says, I will not give a contract to my political enemies, he's referring to him and to his son, which are the ones that are the stockholders of Rosado La Vida. The other two that were members of the municipal legislature had nothing to do with Rosado La Vida Corporation. Now, when that happened, the mayor, when he received the claim that was filed here, the mayor asked the Head Start director if he had spoken to Mr. Pagan. And then she said, yes, I spoke to him, and I told him that this contract, we couldn't sign it because of the mayor's direct instruction that this contract could not be signed, and there were no other reasons, because as I said before, all the persons that have to do with the approval, and all the persons that have to do, the committees that have to do with the approval, had approved the contract. So there were no reasons other than the decision made by the mayor for the contract not to be signed. When they filed this claim, the mayor called again the director of the Head Start program, and he asked him if he was aware that they had filed this claim, which she said that she wasn't aware, and the mayor asked him, are you going to testify? And the director said, if I am called to testify, I will tell the truth, which is that this contract was approved by everyone, and that the only reason why this contract was not signed is because you gave the instruction not to sign the contract. Then once again, this time to the Head Start director, the mayor says to her, but are you aware that these persons, referring to the shareholders of Rosado Building Corporation, are you aware that these persons are my political enemies? As a matter of fact, the director of the Head Start program was later dismissed for this reason, and she also filed a claim in federal court for political discrimination. I think we're fairly familiar with the fact that you allege. I would like to ask you about the theory that this type of activity, that is contracting with people who are carrying out the policies of the municipality, can be chosen on the basis of political affiliation. You know, that theory applies to policy making. Or people that carry out, well, I think it's a little broader than that, but let's leave it at that. From our point of view, that allegation by defendants appellee is contrary to all the case law that has to do with policy making. Now, we are talking here about a contract for the lease of a property. Under no circumstance, we are talking about a contract for the administration, if I may finish, for the administration of the Head Start program, neither we are talking of a contract to implement the Head Start policy. It's simple, a contract for a real estate contract. It's just to lease a property. That's all it is. It has nothing to do with policy. It has nothing to do with the Head Start program. It has nothing to do with how that program is implemented. And as I say before, this property was the only one that complied with all the requirements of the Head Start program, and it was the Head Start program that then made the approach to a plaintiff. I have one more question. Sure. I'm going to ask you to be as brief as possible in your answer. What do you understand is the rule as to reopen? Basically, in the motion you filed, you're asking us to remand for reopening of the record. What is the rule on that? Well, your Honor, there's one fact. We have an obligation with the court.  When we found out for the first time this new development, we immediately called our office. We spoke to Claudio Lee from Alvarado's office, and we informed them, listen, for the first time, I just found out this. And what I intend to do is to file this motion, which I did on the same day. Now, I know that the policy of, as it was called by the counsel, changing theory in the 11th hour, the court has a rule against that. But I also strongly believe that if I get knowledge of something which I didn't have, even the day before the oral arguments, I have the responsibility to inform the court and inform the counsel. Your problem is that your client knew it. Pardon me? Your problem is that your client knew it all along. Yes, but my client knew all along, but he was under the impression, as I said before, and as he explained to me, there were two different divisions and two different properties. And there's another fact. I represent municipalities in Puerto Rico, and I know that all the contracts are registered within the clerk of the municipal government, and defendants, I mean, not the lawyers, but the municipality also knew of the system of that contract. And I'm sure that the same way we were unintentionally keeping the dark as to this fact that there was a contract, I'm also sure that the municipality did not inform the counsel that the system of that contract, not only the system of that contract, but that contract was in effect when all these things occurred. Thank you. Thank you. Mr. Alderondo, good morning. It's still morning. It's still good morning. Good morning, Judge Soteria, Judge Dyke, and Judge Thompson. For the purpose of record, alias Alderondo, unless you instruct me otherwise, I would like to begin with Judge Dyke's line of questioning. The exchange to which you were referring, Judge Dyke, goes like this. The mayor meets the shareholder at the games, and he says, And I do not sign contracts with enemies, with enemies of mine, which is what you already know, which is what your brother and your nephew are. But I think there's a more fundamental problem with plaintiff case. Plaintiff is essentially a corporation. Plaintiff is not asserting the rights of its members. It's not an organizational standard. There's a problem there because the O'Hare case in the Supreme Court was a corporation also, and the court looked at it as though the rights of the shareholders were involved. Right. For purpose of standing, Your Honor, if I understand you correctly, but we're not talking about standing here. We're talking about an essential requirement, a statutory requirement of 1983, which is that the plaintiff asserts its own constitutional injury and asserts that the retaliation occurred in response to him asserting a constitutional right. I'm sorry. And I think that's the more fundamental. I think you had a hard time separating the corporation from the individual shareholders. But what about the question of whether the shareholders here can assert the rights of their relatives? Right. And I think that's the other fundamental problem here. I think it's a multifaceted defense in our view. The first one being the one I just mentioned, the second one being that. The plaintiff's theory in this case, and it's repeated in their brief and appeal, it's repeated at page 28 of their brief, at page 8 of their reply brief, the motion of summary judgment. And I quote, there are genuine issues of material fact as to the reasons for RBC, the plaintiff's contract's denial, particularly whether said denial was in retaliation for its shareholders' family ties to the mayor's political enemies. But as you very well know, family ties are not the associations that the First Amendment protects. There are, unfortunately, in multiple opinions, numerous instances of retaliation, but retaliation has not helped to rise to the level of constitutional significance. There are some cases where an individual suffered an adverse hiring decision because something a spouse did, and that seems to have been. I think at least this Court is very clear on the fact that I cannot assert the rights or the injuries of my spouse. Under Section 1983, I don't have them before me. I know there are many, but I'd be glad to submit it in a 28-day letter if you allow me. But there are countless cases that say that I cannot assert the rights. I cannot bring a 1983 claim for any violation of the constitutional rights of my spouse. Wrongful death cases, if the plaintiff has died or if the state suffers a constitutional injury, the heiress cannot bring a 1983 claim because claims are personal. There's a case called Thompson, which involves Title VII, in which the defendant suffered an adverse or the plaintiff suffered an adverse hiring action based on something that his wife had done, and that was held to be actionable under Title VII. Well, I beg to differ under Section 1983, Your Honor, and, again, I'll be glad to submit a case. You have 10 days. Thank you, Your Honor. You're on the other side. They have 10 days to respond. In fact, the District of Puerto Rico, and I don't think this Court has done it before, but under Puerto Rico law there's what is called a conjugal partnership. And, again, the Court has held that absent the constitutional, the exercise of constitutional right and the violation of the constitutional rights of the conjugal partnership, it cannot bring claims relying on the injuries or the constitutional right violations of the spouses. So, but I'll be glad to submit the cases for the Court on that regard. I just want to tweak this a little bit more. So based on what the mayor said, it wasn't simply that he was saying that, no, by virtue of your association with my political enemies, he seemed to be saying a relative of a political enemy is themselves an enemy, a political enemy. Well, but it goes to, as you were framing it, it goes to a family tie. It doesn't go to the, first of all, there's nothing here that this faction was a faction in the political sense. There's, no one has identified any other member of this faction aside from the family members. There's no indication of what they did. There's not, it's not in the context of a primary election. It's what they label a political faction. But what it appears from the record is that the faction is essentially a group of family members that had an institutional difference with the mayor within the party that filed suit against the mayor. But again, there's nothing on this record that shows that the shareholders were participants of that suit, which would be a productive activity. And there's nothing on the record that they engage in any sort of political activity. In fact, I think it's page 155 of the appendix in which the shareholders being asked the line of question we were discussing just earlier, it says that he's not active in politics at all. So, and their claim, their first online claim hinge on two things, on the exchange we were just talking about in which clearly they talk about family members, and the exchange with the health head start director. That exchange also makes reference to the family relationship. What the mayor says and asks the head start director, and it's in page 134 of the appendix, is why did you tell the family from Osara building about the case or something? And then he goes to say, though you know that those are my political enemies, so he keeps referring to the family members in order to ask the real problem here. So what if the family members have been the plaintiffs in the 1983 action? I think that, well, the family members filed suit against the mayor, and as you know that's First Amendment protected conduct. That in and of itself would have given them a case of action, but the family members are neither part of the suit nor shareholders. Could the family members have sued the mayor? Well, if the mayor deprived them of their constitutional rights and they can establish causation, of course. They could probably sue. But, again, the family members are the municipal legislators, were not shareholders to this company, and are not part of the suit, Your Honor. Now going, if I may, going back into Judge Torreyes' line of questioning regarding our waiver argument, I know Brother Counsel for a while now, and I know he's a very serious attorney, but I don't think the problem is his here. And I think he obviously has done the right thing. He's brought it to the attention of the court. Now the shareholders, as you very well mentioned, an opinion on order was issued. I'm sure they read the opinion on order. The opinion on order clearly identifies as uncontested fact that no prior relationship existed. So even though Brother Counsel did the right thing, I think his client is probably the one who should be blamed here. Anyways, courts usually allow amendments to pleadings and to theories, or usually consider them on their grounds of futility, whether it would be futile to allow for the amendment. I think in this case, with all the problems we've identified with their case, it would be futile to allow for an amendment of the theory. Unless your Honors have any other questions, I'll submit the case on the brief. I noticed, and I apologize to the court, that the motion and the response I filed last week, I missed the quotation marks. Apparently there was a problem with the conversion, so I shall leave this morning to amend the motion for it to include all symbols and even quotation marks. Thank you, Your Honors. Thank you. Thank you. Very briefly, Your Honors. I want to stress that when the mayor called Ms. Elba Falto, which was the Head Start director, he said to her, and that's on the record, I will not give a contract to my political enemies. And this contract was being given to Rosaura Building Corporation, which Mr. Pagan and her father are the shareholders. Those other two that were members of the relatives had nothing to do with Rosaura Building. So there's no doubt in my mind that when he referred to my political enemies, when he called Elba Falto, he was referring to the shareholders. And lastly, it's true that the opinion on order refers to persons that have never had contracts. And we plaintiff knew that, but by the same token, defendant also knew of the system of that contract, and defendant never informed their attorneys of the system of the same. Respectfully submitted. Just one question. Sure. So the shareholders themselves, though, have not, I mean, you acknowledge that they themselves have not engaged in political activity. No, Your Honor. Are you saying, if you don't, I mean, I was, the follow-up was, are you saying that it is enough that the mayor perceives them as political enemies, even though they haven't engaged in political? The shareholders are Mr. Pagan, his wife, and Mr. Pagan's father, and his wife. Mr. Pagan's father is the one that in the deposition he said that he's not active in politics. But that's not the issue as to the president of the corporation, which he supported that faction that was against Mayor Rodriguez in a moment, in a different, in a time, against the leadership within the popular party in Puerto Rico. Now, he was involved in that, as were many hundreds of people involved in that movement against the mayor. And there were other members of the municipal legislature that fought the mayor. They went to court. That was public knowledge. And they were not only the relative of Mr. Pagan. And Mr. Pagan was involved in that, and he supported it. But his father was the one that said that he, which is an old man, he said, I don't get involved in politics. Thank you.